# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONE CALL MEDICAL, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>Defendant. | No. 2:17-cv-01385-KJM-CKD<br><br><br><br>ORDER |

In this insurance coverage case, defendant moves for summary judgment of all of plaintiffs' claims. For the reasons below, the court GRANTS defendant's motion and DISMISSES the case.

I.     BACKGROUND

Employers Insurance Group ("Employers") is an insurer that issues policies covering workers' compensation risks. Undisputed Material Fact (UMF) 1, ECF No. 17-2. Employers contracted with plaintiffs One Call Medical, Inc. and Zone Care USA of Delray, LLC (collectively "One Call") to have One Call provide workers' compensation services to Employers' clients, including the arrangement of transportation for injured workers. UMF No. 2. One Call's parent company, Coral Acquisition, Inc., purchased a managed care errors and

/////

1

omissions liability insurance policy for itself and its subsidiaries from defendant National Fire & Marine Insurance Company ("National Fire"). UMF No. 3.

On September 6, 2016, One Call arranged for Tyrone Shacklefoot, an injured worker covered under Employers, to be transported to his medical appointment in a Toyota Sienna van taxi ("the van"), pursuant to One Call's agreement with Employers. UMF No. 5–6. The van was neither owned nor operated by One Call. Opp'n, ECF No. 20, at 15[1] (citing Mot. at 1–2; UMF 6, 8, 14). While transporting Mr. Shacklefoot back home from his appointment, the van was involved in a five-vehicle collision; Mr. Shacklefoot was severely injured and rendered a quadriplegic as a result. *See* UMF No. 7–8; Employers Demand Letter at 55. Employers demanded indemnification from One Call with respect to the resulting costs (hereinafter the "Employers Claim"). Demand Letter at 55. Before the court is One Call's action against its insurer, National Fire, in which One Call claims National Fire is obligated to defend and indemnify One Call for the Employers Claim. Mot., ECF No. 17-1, at 7.

  A. <u>Employers' Demand Letter and Arbitration Claims Against One Call</u>

On September 30, 2016, Employers sent a demand letter to One Call seeking "indemnification against all increased costs and benefits it is obligated to pay to Mr. Shacklefoot as a result of the injuries he sustained in the cab ride on September 6, 2016." Not. of Removal, ECF No. 1, Ex. 1 ("Compl.") ¶ 40; *see also* Mot., Ex. D, ECF No. 17-5 ("Demand Letter"), at 55. When One Call refused to meet Employers' demand, the parties entered arbitration over the dispute, as required by the "Master Services Agreement" between them. *See* Alternative Dispute Resolution Statement of Claim ("ADR Claim"), ECF No. 17-5, Ex. T. Employers' statement of its arbitration claim, dated August 2017, describes the Shacklefoot accident, ADR Claim ¶¶ 20–24, and alleges the following claims against One Call: (1) fraudulent inducement, (2) negligent misrepresentation, (3) breach of contract for failure to indemnify, (4) breach of contract for failure to follow same service standards for all customers, (5) breach of contract for failure to

/////

---

[1] Citations to page numbers refer to the ECF pagination, not the document's internal pagination.

permit audit, and (6) breach of contract for failure to maintain insurance coverage. ADR Claim ¶¶ 35–82.

  B.  One Call's Claim Against National Fire

  On May 11, 2017, One Call filed the operative complaint here, which alleges claims for declaratory relief and breach of contract against National Fire, and seeks legal defense costs and indemnity from National Fire for Employers' claim against One Call. Compl. at 12–14. One Call's complaint, filed before Employers' statement of arbitration existed, only refers to the claims made in the demand letter, which it terms the "Employers Claim." *See* Compl. ¶ 40 ("All claims asserted in the Demand Letter are hereinafter collectively referred to as the 'Employers Claim.'"). The more specific claims asserted in the arbitration—namely, fraudulent inducement, negligent misrepresentation, breach of contract for failure to follow same service standards for all customers, breach of contract for failure to permit audit, and breach of contract for failure to maintain insurance coverage—are not part of the "Employers Claim" as it is defined in the complaint. *See id.*

  The complaint alleges that One Call forwarded Employers' demand letter to National Fire and requested coverage for the Employers Claim under the managed care and omissions liability insurance policy One Call purchased from National Fire ("the Berkshire policy"). Compl. ¶ 41. National Fire denied One Call's claim, citing the policy's automobile exclusion clause, which provides:

> **Section 9 Exclusions**
> The Insurer will not be liable to make any payment for Loss in connection with any Claim made against any Insured:
> . . .
> **D. Motor Vehicle**
> based upon, arising out of, or attributable to, or directly or indirectly resulting from or in any way involving the actual or alleged ownership, operation, use, maintenance, loading or unloading of any motor vehicle, trailer, watercraft, aircraft or helipad.

UMF No. 12; Compl. ¶¶ 26, 43. One Call resubmitted its claim for coverage, asserting that the Employers Claim was "for negligent management of Mr. Shacklefoot's transportation," and

3

therefore the exclusion did not apply. Compl. ¶ 44. National Fire denied the claim again. *Id.* ¶ 45.

Based on these facts, One Call pleaded the following claims against National Fire: (1) declaratory relief that "the Employers Claim qualifies for coverage under the Berkshire Policy" and

> [t]he Motor Vehicle exclusion in the Berkshire Policy does not apply to exclude coverage because the Employers Claim is not one for negligent operation of motor vehicle. Instead, it alleges negligent management of Mr. Shacklefoot's transportation needs, a professional task encompassed by the Employers Contract.

*Id.* ¶¶ 48, 49,[2] and (2) breach of the Berkshire policy contract, *id.* ¶ 56.

On October 17, 2018, National Fire moved for summary judgment on each of One Call's claims based on the application of the Motor Vehicle Exclusion contained in plaintiffs' policy. Mot. at 7–8. Plaintiffs opposed, ECF No. 20, and defendant filed a reply, ECF No. 23. The court heard oral argument on January 11, 2019. For the following reasons, the court GRANTS defendant's motion for summary judgment.

II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[3]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio*

---

[2] The complaint also references the "Assumed Contract exclusion," but at hearing the parties agreed that this exclusion is not relevant to the instant motion. *See* Compl. ¶ 50.

[3] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee note to 2010 amendment.

4

*Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . .  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247–48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at 587–88 (citation omitted); *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

III.  REQUEST FOR JUDICIAL NOTICE

Defendant filed a request for judicial notice in conjunction with its motion for summary judgment.  Req., ECF No. 18.  Defendant requests the court take judicial notice of: (1) the complaint filed in Sacramento County Superior Court, case number 2017-00208660, *Tyrone Shacklefoot v. One Call Care Management, et al.* (Mot., Ex. G); (2) the complaint in intervention for reimbursement filed in the Sacramento County Superior Court for case number 2017-00208660, *Tyrone Shacklefoot v. One Call Care Management, et al.* (Mot., Ex. H); (3) excerpts from the deposition of the van driver, Mansour Aghdam, taken February 21, 2018 (Mot., Ex. M); and (4) excerpts from Tyrone Shacklefoot's deposition taken on February 21, 2018 (Mot., Ex. N).  *Id.*  Plaintiffs have not opposed this request.

According to Rule 201(c) of the Federal Rules of Evidence, the court may take judicial notice of matters that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," including records comprising publicly filed

documents, such as state court records. *In re Qualcomm Anti-Trust Litigation*, 292 F. Supp. 3rd 948, 963–64 (N.D. Cal. 2017) (quoting Fed. R. Evid. 201(b)). Because the existence of the documents and accuracy of the copies provided by defendant are not in dispute, the court takes judicial notice of the existence and content of the documents requested, but does not take judicial notice of the truth of the statements contained therein.

IV. DISCUSSION

In its demand letter, Employers claimed One Call is required to indemnify it against "all increased costs and benefits it is now obligated to pay to Mr. Shacklefoot as a result of the injuries he suffered in the cab ride," because Mr. Shacklefoot's injuries were attributable to One Call's negligence. Demand Letter at 55. Specifically, Employers claimed One Call did not "properly assess[] the medical transportation needs of Mr. Shacklefoot" and failed to "obtain the written consent for the assignment of its duties [to transport Mr. Shacklefoot] to Diamond Cab." *Id.* National Fire argues it is not required to defend or indemnify One Call for these claims because the claims arise out of an automobile accident, and the Berkshire policy contains a motor vehicle exclusion clause. As noted above, One Call's policy from National Fire provides:

> **Section 9 Exclusions**
> The Insurer will not be liable to make any payment for Loss in connection with any Claim made against any Insured:
> . . .
> **D. Motor Vehicle**
> based upon, arising out of, or attributable to, or directly or indirectly resulting from or in any way involving the actual or alleged ownership, operation, use, maintenance, loading or unloading of any motor vehicle, trailer, watercraft, aircraft or helipad.

UMF No. 12. Defendant argues plaintiffs' case cannot survive as a matter of law, because National Fire's insurance policy does not cover the claims at issue, and no genuine issues of material fact exist. *Id.* at 7.

A. Choice of Law

Because this court has diversity jurisdiction over plaintiffs' state-law contract claims, the court applies the choice-of-law rules of the forum state, California. *See Arno v. Club*

6

*Med, Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994). California uses two choice-of-law tests. The first is statutory, whereby "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. Neither party provides the court with information on whether the contract at issue prescribed a place of performance, although defendant notes the policy was issued to One Call's parent company in Florida. *See* Mot. at 15 n.6.

California's second test is the common-law "governmental interest test." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1198 (S.D. Cal. 2007) (citation omitted). The first step in the governmental interest test is to "identify the applicable rule of law in each potentially concerned state and [ ] show [whether] it materially differs from the law of California." *Id.* (citing *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (Cal. 2001)). Defendants observe that Florida law "appears to be in alignment with California law on application of a Motor Vehicle Exclusion such as the one found in the National Fire & Marine Policy, so there is no conflict." Mot. at 15 n.6 (citing *Sparta Ins. v. Colareta*, 990 F. Supp. 2d 1357, 1366–67 (S.D. Fla. 2014)). Plaintiffs do not challenge this assertion. Because the parties appear to agree that Florida law does not materially differ from California law, and the court agrees, the court applies California law here. *Compare Sparta Ins. v. Colareta*, 990 F. Supp. 2d at 1366–67 (describing Florida's concurrent-cause doctrine, which permits coverage when loss attributable to multiple causes, as long as one cause is an insured risk, and "the multiple causes of injury are not related and dependent, and involve a separate and distinct risk."), *with Allstate Ins. Co. v. Jones*, 139 Cal. App. 3d 271, 277 (Ct. App. 1983) (describing California's concurrent proximate cause doctrine, explaining coverage exists despite automobile exclusion when non-auto-related (covered) conduct "exists independently" of any automobile use (non-covered conduct)).

B. <u>Application of Automobile Exclusion</u>

The California Supreme Court has provided guidance regarding how to interpret automobile exclusion clauses similar to the one at hand in *State Farm Mutual Automobile*

7

*Insurance Co. v. Partridge*, 10 Cal. 3d 94 (1973). In *Partridge*, the insured negligently filed down the trigger mechanism of his pistol so that the gun would have "hair trigger action." *Partridge*, 10 Cal. 3d at 97. With the gun in tow, the insured negligently drove his vehicle into rough terrain, hitting a bump and causing the pistol to discharge and injure a passenger. *Id.* at 98. The insured's homeowner policy included an automobile exclusion that excluded coverage for "bodily injury . . . arising out of the . . . use of . . . any motor vehicle." *Id.* at 98. The court held the exclusion did not preclude coverage, because the insured's negligence in altering the pistol was a cause of the injury concurrent with the negligent use of the automobile. *Id.* at 103. Because "the insured's negligent modification of the gun suffice[d], in itself, to render him fully liable for the resulting injuries," his insurance provider could not avoid coverage simply because one of the two concurrent causes of the injury involved an automobile. *Id.* at 103–05.

California courts have interpreted *Partridge* to mean an automobile exclusion will not apply "only if 'the liability of the insured [1] arises from his non-auto-related conduct, and [2] exists independently of any "use" of his car . . . .'" *Allstate Ins. Co. v. Jones*, 139 Cal. App. 3d at 277 (quoting *Partridge*, 10 Cal. 3d at 103); *accord Safeco Ins. Co. v. Gilstrap*, 141 Cal. App. 3d 524, 527 (Ct. App. 1983). Whether liability exists independently of automobile use depends on whether the liability can be "disassociated from the use of the vehicle itself" or whether it is "dependent upon and related to the use of the vehicle" such that it "cannot be deemed an independent act" that falls outside the exclusion. *Gilstrap*, 141 Cal. App. 3d at 528 (citations omitted).

        1.      Application of *Partridge*

Defendants argue that the Employers Claim, for which One Call seeks coverage, is "based on conduct and injuries that clearly and inextricably resulted from the use of a motor vehicle," and therefore summary judgment is appropriate. Reply at 5. Plaintiffs counter that One Call's "alleged acts of negligence are independent concurrent causes of the underlying claim" and should therefore be covered. Opp'n at 11. Defendants are correct. Even though One Call's actions in contracting with Diamond Cab could be characterized as "non-auto-related conduct,"

/////

One Call's conduct does not "exist independently of any 'use' of [the] car" and is not capable of being "disassociated from the use of the vehicle itself." *Gilstrap*, 141 Cal. App. 3d at 527–28.

For support, defendants cite *Evanston v. Atain Specialty*, 254 F. Supp. 3d 1150 (N.D. Cal. 2017), in which the court enforced an automobile exclusion "broader than in *Partridge* and its progeny." *Id.* at 1164. In *Evanston*, the liability at issue arose out of an automobile accident caused by two concurrent sources of negligence: one insured employee, Hernandez, negligently directed traffic, allowing pedestrians to cross the intersection, causing a second employee, Keyarts, who was negligently driving his motorcycle, to hit a crossing pedestrian. *Id.* at 1153. The court found that liability flowing from Hernandez's non-auto-related negligence fell under the automobile exclusion because (1) a motorcycle played an "active role" in causing the damages and (2) Hernandez's non-vehicular conduct (directing traffic) "was negligent because it exposed [the victim] to the danger of negligent automobile use." *Id.* at 1162–63 (citing *Fire Ins. Exch. v. Vasquez*, 2017 WL 1173730, at *5 (Cal. Ct. App. Mar. 29, 2017)).

Here, an automobile played an "active role" in causing Mr. Shacklefoot's injuries, giving rise to the Employers Claim for which One Call seeks indemnification. *See* Compl. ¶ 40 ("All claims asserted in the Demand Letter are hereinafter collectively referred to as the "Employers Claim."); Demand Letter at 55. One Call's alleged negligence in arranging for an inappropriate vehicle for Mr. Shacklefoot was negligent because it exposed Mr. Shacklefoot to the automobile accident that caused his injuries. As such, the negligence for which One Call seeks coverage, though it has a non-vehicular component, is not independent from the injury-causing automobile use, and the motor vehicle exclusion applies.

2. Application of *Essex* and *Scottsdale*

Plaintiffs argue that National Fire's motion relies on an "overly-broad interpretation" of the motor vehicle exclusion, which is unsupported by the case law, and that National Fire's interpretation creates an "impermissible result not within the reasonable expectations of the insured." Opp'n at 5 (citation omitted). To support this argument, plaintiffs rely on two California cases: *Essex Ins. Co. v. City of Bakersfield*, 154 Cal. App. 4th 696 (2007)

/////

9

and *Scottsdale Indemnity Co. v. Lexington Ins. Co.*, No. EDCV 12-00017 VAP (OPx), 2012 WL 6590716 (C.D. Cal. Dec. 18, 2012). The court addresses each case in turn.

Plaintiffs cite *Essex* for the proposition that the motor vehicle exclusion must be read to include some limitation on its scope, because the "average layperson" would not understand the clause to "limit coverage in any cases 'involving automobiles by anyone anywhere' . . . ." Opp'n at 7 (citing *Essex*, 154 Cal. App. 4th at 707). Specifically, plaintiffs argue the exclusion should not be interpreted to apply here, because the taxi involved in the accident was not owned or operated by One Call. Opp'n at 5–9.

*Essex* involved a commercial general liability (CGL) insurance policy purchased by the City of Bakersfield to cover occurrences during a special event. *Essex*, 154 Cal. App. 4th at 701. The policy contained an auto exclusion that excluded coverage for "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." *Id.* The policy also included an additional section modifying the original auto exclusion, stating, "This insurance does not apply to 'bodily injury' or 'property damage' arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any 'auto.'" *Id.* at 701–02.

An automobile accident occurred outside the event, and the victims sued the City, claiming the way the City controlled event-related traffic created a "dangerous condition" that caused their accident. *Id.* at 609–701. The City demanded its insurer provide a defense and indemnity, and the insurer refused, citing the auto exclusion. *Id.* at 702. The court found the automobile exclusion did not apply to the off-site accident based, in part, on the way the exclusion was written. *Id.* at 708. Because the original exclusion was limited to automobiles "owned or operated by or rented or loaned to any insured," and the language in the exclusion modification was "so vague," one would reasonably assume it was essentially repetitive of the original exclusion. *Id.* at 707. Moreover, the court noted, when read in the context of the other exclusions in the policy, it was reasonable to deduce that the auto exclusions were meant to apply

/////

10

only to cases involving acts of the insured or its agents, because the policy's other exclusions only involved those types of situations. *Id.* at 708.

Such is not the case here. The motor vehicle exclusion in the Berkshire policy is not limited to automobiles owned or operated by the insured. Rather, it clearly states it excludes from coverage liability that is "based upon, arising out of, . . . or in any way involving the actual or alleged ownership, operation, use, maintenance, loading or unloading of any motor vehicle . . . ." UMF No. 12. An average layperson would not assume the exception was limited to motor vehicles owned or operated by the insured based on the language "any motor vehicle." Moreover, unlike the policy in *Essex*, the Berkshire policy's other exclusions are not all limited to situations involving only the insured. For example, the exclusion immediately preceding the motor vehicle exclusion is for "any actual or alleged damage to or destruction of any tangible property . . . ." Mot., Ex. B ("Berkshire Policy"), ECF No. 17-5, at 24. The reasoning applied in *Essex* is not applicable to the motor vehicle exclusion at issue here.

In *Scottsdale*, the parties' dispute arose when a hired security officer caused a fatal accident by negligently securing an intersection to allow a funeral procession to travel through it. *Scottsdale Indemnity Co.*, 2012 WL 6590716, at *1. None of the vehicles involved in the accident was owned or operated by the insured. *Id.* at 3. The insurance policy at issue included an automobile exclusion that applied to liability arising out of the "use" of any "auto" "owned or operated by or rented or loaned to any insured." *Id.* at 4. The court found the exclusion did not apply, because the insured's security officer was not seated on his motorcycle at the time of the collision, so the motorcycle was only incidental to the insured's negligent conduct, and therefore the loss "did not arise out of the use of the covered auto." *Id.* at 7.

*Scottsdale* is also distinguishable from the case here. Plaintiffs attempt to analogize One Call's alleged negligence in arranging Mr. Shacklefoot's transportation to the *Scottsdale* security officer's negligence in stopping traffic, arguing that both are too far removed from the "use" of a vehicle to fall under an automobile exception. Opp'n at 10–11. However, plaintiffs omit a key distinguishing factor: the automobile exception in *Scottsdale* was expressly limited to the use of automobiles owned or operated by the insured. *Scottsdale*, 2012 WL

11

6590716, at *4. The court's decision, therefore, turned on whether the insured security officer was using his motorcycle when the accident occurred, because the exclusion only applied to that automobile. In this case, the policy includes a much broader exclusion, which by its terms applies to "any" automobile. Thus, even assuming for argument's sake that One Call's arranging transportation is not considered "use" of an automobile, the exception would still apply as long as One Call's liability arose out of another party's use of an automobile.

A recent case out of this district analyzed both *Essex* and *Scottsdale* and came to the same conclusion; while this court is not bound by a colleague's decision, it finds this other case helpful here. In *Maxum Indem. Co. v. Kaur*, 356 F. Supp. 3d 987 (E.D. Cal. 2018), the court concluded that, when the "plain language of the contract is not ambiguous," a "broad auto exclusion[]" is enforceable, and "limiting an auto exclusion to autos that have a connection to the insured is inappropriate when the language has no such limitation." *Id.* at 1003–04. In *Maxum*, the court analyzed a motor vehicle exclusion, nearly identical to the Berkshire policy's provision, providing as follows:

> 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, operation, use, chartering, renting, entrustment to others, 'loading or unloading' of any aircraft, 'auto' or watercraft, including the supervision, hiring, employment, training or monitoring of, or failure to warn, anyone in connection with the ownership, maintenance, operation, use, chartering, renting, or entrustment to others of any aircraft, 'auto' or watercraft.

*Id.* at 991. The dispute in *Maxum* arose out of an accident involving a tractor-trailer. Kaur, the defendant, did not own the vehicle, but had trained the driver of the vehicle. *Id.* at 990. Maxum Indemnity undertook Kaur's defense in the suit arising out of the accident, but later argued the claim was not covered, citing the automobile exclusion. *Id.* at 992. Though the court noted "it is rare for a defendant to be sued for an automobile accident when the defendant had no connection with any of the vehicles involved," it ultimately rejected Kaur's argument that the exclusion should be limited to automobiles owned or operated by the insured. *Id.* at 1002–04 (quoting *Essex*, 154 Cal. App. 4th at 710). Given the unambiguous language of the exclusion, the court found the policy did not cover plaintiff's liability. *Id.* at 1004.

/////

12

1 | The situation at bar is analogous. The language of the auto-exclusion here plainly
2 | does not limit the exclusion to vehicles owned or operated by the insured. *See* UMF No. 12.
3 | Thus, even though One Call had only an attenuated connection to the vehicle at issue, the
4 | exclusion is enforceable, and it eliminates coverage for the Employers Claim.

### C. Exclusion Conspicuous, Plain and Clear

In California, "to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be conspicuous, plain and clear." *Haynes v. Farmers Ins. Exchange*, 32 Cal. 4th 1198, 1204 (2004) (internal quotation marks and citation omitted). This means "any such limitation must be placed and printed so that it will attract the reader's attention" and "stated precisely and understandably, in words that are part of the working vocabulary of the average layperson." *Id.* (citations omitted).

Defendants have introduced Section (9)(D) of the National Fire & Marine policy under which plaintiffs are claiming coverage of Employers' claims, which contains the motor vehicle exclusion. *See* Berkshire Policy at 24. Plaintiffs do not challenge the accuracy or admissibility of this evidence. *See* Opp'n to UMF 12, ECF No. 20-1. Defendants argue Section (9)(D) satisfies California's conspicuous language standard because it is located near the beginning of the policy and it is introduced by two bold headings: "Exclusions" and "Motor Vehicle." Mot. at 23–24 (citing *Dominguez v. Fin. Indem. Co.*, 183 Cal. App. 4th 388, 396 (2010) (finding limiting language is conspicuous where it is "placed and printed so that [they] will attract the reader's attention"); *Haynes,* 32 Cal. 4th at 1205 (finding exclusion not conspicuous, plain and clear where "there is nothing in the heading to alert a reader that it limits permissive user coverage, nor anything in the section to attract a reader's attention to the limiting language")). Plaintiffs also do not challenge this assertion. *See* Opp'n at 18. Defendants have met their burden to show the exclusion was conspicuous.

Defendant also argues the exclusion is "plain and clear," because it is "stated precisely and understandably, in words that are part of the working vocabulary of the average layperson." Mot. at 24; *see also Haynes*, 32 Cal. 4th at 1211. Plaintiffs challenge this assertion, arguing "[t]he auto exclusion in the instant case would not have been understood by a layperson

13

to exclude coverage 'involving automobiles by anyone anywhere,' even including automobiles driven by independent contractors who had an independent contractual duty." Opp'n at 18. However, it is undisputed that the policy states: "the insurer will not be liable for any Loss in connection with any Claim made against any insured: . . . Based upon, arising out of, or attributable to . . . the actual or alleged ownership, operation, [or] use . . . of any motor vehicle . . . ." UMF No. 12 (citing Berkshire Policy at 23–24). This language is broad, but it is not unclear; it uses a simple vocabulary and is plainly stated. Courts have enforced automobile exclusions with similarly broad language. *See Maxum Indem. Co.*, 356 F. Supp. 3d at 1004 (finding clear and conspicuous an exclusion providing the policy "does not apply to... '[b]odily injury'. . . arising out of the . . . use . . . of any . . . 'auto' . . . ."); *Evanston*, 254 F. Supp. 3d at 1157 (enforcing clause that excluded coverage for "'bodily injury' . . . arising out of or in connection with any 'auto' . . . . whether or not owned . . . by any insured."); *Farmers Ins. Exch. v. Superior Court*, 220 Cal. App. 4th 1199, 1202 (2013), *as modified on denial of reh'g* (Oct. 28, 2013) (enforcing exclusion of "bodily injury that . . . results from the ownership, maintenance, use, loading or unloading of . . . motor vehicles . . . ."); *but see Partridge*, 10 Cal. 3d at 99 (noting, in dicta, that liability under policy including exclusion for "bodily injury . . . arising out of the . . . use of . . . any motor vehicle," "could possibly be predicated upon the ambiguity of the exclusionary clause in the context of the instant accident, [but] we need not rely upon this ground"). Defendants have met their burden to show the exclusion is conspicuous, plain and clear.

V.  CONCLUSION

Given the undisputed material facts and the text of the policy in question, the court finds that, as a matter of law, the motor vehicle exclusion applies to the Employers Claims against One Call for which One Call seeks coverage by National Fire. Therefore, National Fire properly denied coverage. Drawing all inferences and viewing all evidence in the light most favorable to

/////

/////

/////

14

plaintiffs, there are no genuine issues of material fact in this case.  As such, defendant's motion for summary judgment is GRANTED.  This case is DISMISSED.

　　　　IT IS SO ORDERED.

DATED:  August 2, 2019.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE